IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| UNITED STATES COLD STORAGE, LLC, <br> 15 Emery Street, Bethlehem, PA 18018 <br><br> Plaintiff, <br><br> v. <br><br> HARBOR FREIGHT TOOLS USA, INC., <br> 26541 Agoura Road, Calabasas, CA 91302, <br> and A.E.D.S. LLC, 412 Barbour Street, Apt. 3, <br> Hartford, CT 06120 <br><br> Defendants. | Case No. ___:21-cv-_____ <br><br> Hon. Judge _____ <br><br><br> **COMPLAINT** <br><br> **JURY DEMANDED** |

---

NOW COMES Plaintiff, UNITED STATES COLD STORAGE, LLC ("PLAINTIFF" or "U.S. COLD STORAGE") by and through its counsel, and prays for judgment and relief against Defendants HARBOR FREIGHT TOOLS USA, INC. and A.E.D.S. LLC, and states as follows:

## THE PARTIES

1.   U.S. COLD STORAGE is a Pennsylvania corporation engaged in the business of warehousing and cold storage with its home office located at 15 Emery Street, Bethlehem, PA 18018, and the warehouse in question located at 1102 N Park Drive, Hazleton, PA 18202. It is authorized to transact business and has transacted business in the Commonwealth of Pennsylvania and the Middle District.  Plaintiff is a citizen of the Commonwealth of Pennsylvania.

2.   Defendant HARBOR FREIGHT TOOLS USA, INC. ("HARBOR FREIGHT"), at all relevant times, was incorporated in the State of Delaware, with its principal place of business in the State of California at 26541 Agoura Road, Calabasas, CA 91302.  Harbor Freight is a citizen of the State of Delaware.

3.   HARBOR FREIGHT regularly conducts business within Pennsylvania and the Middle District of Pennsylvania.

4.   Defendant A.E.D.S. LLC ("A.E.D.S."), at all relevant times, was incorporated in the State of Connecticut, with its principal place of business at 412 Barbour Street, Apt. 3, Hartford, CT 06120. A.E.D.S. is a citizen of the State of Connecticut.

7455603.1

5. A.E.D.S. regularly conducts business within Pennsylvania and the Middle District of Pennsylvania.

6. For purposes of diversity jurisdiction, neither of the Defendants are citizens of the same state as Plaintiff.

**JURISDICTION AND VENUE**

7. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332, as this action is between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

8. Venue is proper in this District Court pursuant to 28 U.S.C. §1391, as a substantial part of the events or omissions giving rise to the claims at issue occurred in Luzerne County and in this District.

**THE FACTS**

9. U.S. COLD STORAGE owns and operates a cold storage warehouse facility located at 1102 N Park Drive, Hazleton, PA 18202 (the "Premises").

10. On July 9, 2019, a fire (the "Fire") occurred at the Premises.

11. This Fire caused substantial damage to U.S. COLD STORAGE's property.

12. The Fire originated at a Freightliner diesel truck (the "Truck"). The Truck cab was attached to a refrigerated trailer.

13. That Truck was owned and operated by Defendant A.E.D.S. and operated by the principal and owner of A.E.D.S., James Samuel Augustus ("Augustus").

14. A gasoline-powered portable 3KW inverter generator (the "Generator") was attached to the Truck's cab.

15. The Generator was a Harbor Freight Predator generator designed and/or sold by Harbor Freight.

16. The Owner's Manual and Safety Instructions for the Generator were copyrighted by "Harbor Freight Tools."

17. The Generator was attached to the Truck's cab by Augustus. The Generator was located at the rear of the Truck's tractor cab, between the cab and the trailer.

18. That Generator was sold, distributed, and placed into the stream of commerce by HARBOR FREIGHT.

19. On day of the Fire, Augustus was sitting in the cab of his Truck, which was parked at the Premises' loading dock at dock number 36. The Generator was running and "in use" at the time of the Fire.

20. On the date of the Fire, a plastic tote containing hoses, belts, and other miscellaneous items was mounted on top of the Generator.

21. Shortly after 3:18 p.m. on July 9, 2019, Mr. Augustus was alerted by a loud noise and discovered his Truck was on fire.

22. Security video footage shows the Fire starting at about 3:18 p.m.

23. The video shows the Fire originating at the rear of the Truck tractor cab, in the area between the cab and the trailer, in the location of the Generator.

24. As of the date of the Fire, the owner/operator Mr. Augustus reported that there had been no known issues with the Truck cab, trailer, or refrigeration unit.

25. The Fire was caused when the excess heat created by the Generator ignited nearby combustible materials.

26. The Fire destroyed the Truck tractor and trailer and spread to other nearby trucks, and to the building itself.

27. The Fire caused damage to U.S. COLD STORAGE's property in an amount in excess of the jurisdictional minimum of $75,000.

## COUNT I: NEGLIGENCE (AGAINST A.E.D.S.)

28. U.S. COLD STORAGE restates and realleges the allegations set forth above.

29. At all times relevant, A.E.D.S, and its agents, owners, representatives, and employees, had the general duty to bring onto the premises a unit that was safe to operate and be present and safe during loading.

30. On the day of the Fire, A.E.D.S. brought onto the premises a tractor trailer that had been modified to include a Generator mounted behind the tractor which they intended to operate while on the Premises.

31. A.E.D.S. had the obligation to exercise ordinary care in executing the following duties:

   a. to properly and safely use and operate the Generator;

   b. to use and operate the Generator in a manner which would not start a fire;

   c. to ensure that no combustible materials were near the Generator while it was in use;

   d. to properly monitor the operation and use of the Generator;

   e. to ensure that the use and operation of the Generator would be reasonably safe and proper and would not create any dangerous conditions, foreseeable risks of harm, or unreasonably dangerous or unsafe or defective conditions, including causing a fire; and

   f. to conduct a reasonable and timely inspection of the generator and the area surrounding the generator.

32. Notwithstanding the aforesaid duties, A.E.D.S., by and through its agents, owners, representatives, and employees, negligently, carelessly, and improperly committed the following acts and/or omissions:

   a. failed to properly and safely use and operate the Generator;

   b. failed to use and operate the Generator in a manner which would not start a fire;

   c. failed to ensure that no combustible materials were near the Generator while it was in use;

    d. failed to properly monitor the operation and use of the Generator;

    e. failed to ensure that the use and operation of the Generator would be reasonably safe and proper and would not create any dangerous conditions, foreseeable risks of harm, or unreasonably dangerous or unsafe or defective conditions, including causing a fire;

    f. failed to ensure that the Generator it chose to use was safe and non-defective;

    g. used and operated the Generator when combustible materials were nearby;

    h. failed to conduct reasonable and timely inspections of the generator and the area surrounding the generator; and

    i. was otherwise careless and negligent.

33. The negligence of A.E.D.S. was a direct and proximate cause of U.S. COLD STORAGE's damages.

34. As a direct and proximate result of the foregoing, U.S. COLD STORAGE suffered a loss in excess of the jurisdictional minimum amount of $75,000 for the damages it sustained from the Fire.

35. U.S. COLD STORAGE is entitled to recover from A.E.D.S. at least the jurisdictional minimum amount of $75,000 due to the negligence of A.E.D.S.

WHEREFORE, Plaintiff U.S. COLD STORAGE prays that this Court enter judgment in its favor in an amount in excess of the jurisdictional limits of this Court with any pre-filing, pre-judgment and post-judgment interest, and all costs and fees allowed by law.

### COUNT II: PRODUCT DEFECT/STRICT PRODUCT LIABILITY (AGAINST HARBOR FREIGHT)

36. U.S. COLD STORAGE restates and realleges the allegations set forth above.

37. HARBOR FREIGHT, by and through its agents and/or employees acting within the course and scope of their agency and/or employment, designed, sold and/or distributed the Generator.

7455603.1

38. HARBOR FREIGHT was engaged in the business of designing, selling and/or distributing the Generator.

39. At the time the Generator left HARBOR FREIGHT's control, the Generator contained a defective condition which, upon normal use, was dangerous beyond the reasonable consumer's contemplation.

40. The Generator was sold to the end user in defective condition and was unreasonably dangerous to the end user, and this defect caused the Fire.

41. At the time the Generator left the control of HARBOR FREIGHT it contained one or more product defects in that the Generator did not include a temperature sensor, thermal cutoff, thermal cutout, or other safety feature to interrupt the engine, and did not include any audible or visual alarm to alert the user when the Generator overheated or caused excess heat.

42. The Generator was also defective in that it had the propensity to produce excess heat and to ignite nearby combustible materials.

43. These product defects caused the Generator to produce excess heat, fail, and cause the Fire.

44. These product defects were a direct and proximate cause of U.S. COLD STORAGE's damages.

45. The Generator's failure caused damages in excess of the jurisdictional minimum of $75,000.

46. As a direct and proximate result of the foregoing, U.S. COLD STORAGE suffered a loss of at least the jurisdictional minimum of $75,000 for the damages it sustained from the failure of the Generator and the subsequent Fire.

WHEREFORE, Plaintiff U.S. COLD STORAGE prays that this Court enter judgment in excess of the Court's jurisdictional limits with any pre-filing, pre-judgment and post-judgment interest, and all costs and fees as allowed by law.

**COUNT III: PRODUCT DEFECT/FAILURE TO WARN (HARBOR FREIGHT)**

47. U.S. COLD STORAGE restates and realleges the allegations set forth above.

48. HARBOR FREIGHT, by and through its agents and/or employees acting within the course and scope of their agency and/or employment, designed, sold and/or distributed the Generator.

49. HARBOR FREIGHT was engaged in the business of selling and/or distributing the Generator.

50. At the time the Generator left HARBOR FREIGHT's control, the Generator contained a defective condition which, upon normal use, was dangerous beyond the reasonable consumer's contemplation.

51. The Generator was sold to the end user in defective condition and was unreasonably dangerous to the end user, and this defect caused the Fire.

52. At the time the Generator left the control of HARBOR FREIGHT it contained a product defect in that the Generator did not include a temperature sensor, thermal cutoff, thermal cutout, or other safety feature to interrupt the engine and/or warn the user when the Generator overheated or caused excess heat.

53. The Generator was also defective in that it had the propensity to create excess heat and ignite nearby combustible materials.

54. These product defects caused the Generator to fail and cause the Fire.

55. HARBOR FREIGHT failed to advertise the type and magnitude of the risk posed by the sale and use of the Generator.

7455603.1

56. HARBOR FREIGHT failed to warn the end user that the Generator did not have a thermal cutout or cutoff, and failed to warn the end user that the Generator created excess heat.

57. HARBOR FREIGHT failed to warn the end user that placing the Generator in a confined space or near plastic or other combustible materials could cause a fire.

58. Other sources, including OSHA materials, prescribe at least three feet of clearance on all sides of a generator.

59. HARBOR FREIGHT failed to warn the end user to keep all combustibles a safe distance away from the Generator, and/or the distance recommended by OSHA, to avoid a fire.

60. If the risk of using the Generator had been properly warned to the product user, the product user would have had the opportunity to comply with the warnings and avoid that risk, and the Fire would not have occurred.

61. These product defects and the failure to warn were a direct and proximate cause of U.S. COLD STORAGE's damages.

62. The Generator's failure, and HARBOR FREIGHT's failure to warn of the dangers posed by the Generator, caused damages in excess of the jurisdictional minimum amount of $75,000.

63. As a direct and proximate result of the foregoing, U.S. COLD STORAGE suffered a loss of at least $75,000 for the damages it sustained from the failure of the Generator and the subsequent Fire.

WHEREFORE, Plaintiff U.S. COLD STORAGE prays that this Court enter judgment in excess of this Court's jurisdictional limits with any pre-filing, pre-judgment and post-judgment interest, and all costs and fees as allowed by law.

### COUNT IV: NEGLIGENCE (AGAINST HARBOR FREIGHT)

64. U.S. COLD STORAGE restates and realleges the allegations set forth above.

65. At all times relevant, HARBOR FREIGHT owed duties to users and consumers of its products, as well as persons or entities who could foreseeably be injured by the use of its products by a user or consumer, including U.S. COLD STORAGE, as follows:

   a. to manufacture, design, sell, and distribute a Generator with a temperature sensor, thermal cutout, or other safety feature to interrupt the engine and/or warn the user when the Generator overheated or caused excess heat;

   b. to manufacture, design, sell, and distribute a Generator that would not overheat or cause a fire;

   c. to properly warn that the Generator was prone to overheating, cause excess heat, or cause a fire when used in confined spaces or near combustible materials;

   d. to properly warn that no combustible materials should be near the Generator while it was in use; and

   e. to otherwise ensure that the Generator would be reasonably safe to operate and would not create any dangerous conditions, foreseeable risks of harm, or unreasonably dangerous or unsafe or defective conditions, including causing a fire.

66. Notwithstanding the aforesaid duties, HARBOR FREIGHT, by and through its agents, owners, representatives, and employees, negligently, carelessly, and improperly committed the following acts and/or omissions:

   a. failed to manufacture, design, sell, and distribute a Generator with a temperature sensor, thermal cutout, or other safety feature to interrupt the engine and/or warn the user when the Generator overheated or caused excess heat;

   b. failed to manufacture, design, sell, and distribute a Generator that would not overheat or cause a fire;

   c. failed to properly warn that the Generator was prone to overheat, cause excess heat, or cause a fire when used in confined spaces or near combustible materials;

   d. failed to properly warn that no combustible materials should be near the Generator while it was in use;

   e. failed to otherwise ensure that the Generator would be reasonably safe to operate and would not create any dangerous conditions, foreseeable risks of

7455603.1

       harm, or unreasonably dangerous or unsafe or defective conditions, including causing a fire; and

       f.    was otherwise careless and negligent.

67. The negligence of HARBOR FREIGHT was a direct and proximate cause of U.S. COLD STORAGE's damages.

68. As a direct and proximate result of the foregoing, U.S. COLD STORAGE suffered a loss in excess of the jurisdictional minimum amount of $75,000 for the damages it sustained from the Fire.

69. U.S. COLD STORAGE is entitled to recover from HARBOR FREIGHT at least $75,000 due to the negligence of HARBOR FREIGHT.

WHEREFORE, Plaintiff U.S. COLD STORAGE prays that this Court enter judgment in excess of its jurisdictional limits with any pre-filing, pre-judgment and post-judgment interest, and all costs and fees allowed by law.

### JURY DEMAND

The Plaintiff demands a trial by jury.

 

/s/ *Howard A. Rothenberg*
Howard A. Rothenberg, Esquire
Rothenberg & Campbell
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone: 570.207.2889
Fax  : 570.207.3991
Email: HRLaw01@gmail.com
Attorneys for Plaintiff U.S. COLD STORAGE

and

/s/ *Martin C. Sener*
Martin C. Sener
(not currently admitted in Pennsylvania)

Kenneth R. Wysocki
(not currently admitted in Pennsylvania)
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, Illinois 60603-1098
Phone: 312.855.1010
Fax:    312.606.7777
Email: msener@clausen.com
Email: kwysocki@clausen.com
Attorneys for Plaintiff U.S. COLD STORAGE

7455603.1